**SAFEWAY STORES 44 INC., Denver Retail, Petitioner,**

**v.**

**The INDUSTRIAL CLAIM APPEALS OFFICE OF STATE OF COLORADO, Nathan J. Aggus, Shirley F. Allen, John M. Alter, Saunn Anderson, David M. Andrews, Isacco Andrighetti, Stefanie L. Angel, Norma Armstrong, Paula S. Atkins,, Rene L. Ayala, Carol J. Baker, Frank Barcia, Heidi, A. Beaver, Melissa M. Beneda, Randolph L. Black, Tami L. Black, Wesny Sl. Blechar, Renee M. Blizzard, Cindy L. Bondarchuck, Randy R. Bowlin, Debra K. Breen, Pearl L. Brockhaus, Joshua P. Brown, Marline F. Bryant, Wendy K. Bunting, Timothy Bustamante, Lyubov Bykov, Lora L. Campbell, Reid A. Canady, Donald Castillo, Tye Cipri, Christine E. Cordova, Jennifer A. Cordova, Kathleen A. Cordova, Teddy A. Day, Joann DeHerrera, Stephen R. DeHerrera, Ann M. Desrosiers, Linda C. Ellis, Karen J. Evasuik, Shelly L. Ferris, Steven T. Ford, Nina H. French, Tammy K. Gallagher, Paula J. Giliand, David J. Goberis, Patricia A. Goerig, John D. Golgart, Juanita M. Gonzales, Kelly A. Gray, Frances D. Hachmeister, Robert L. Halstead, Allison Hannah, Regina M. Hearn, Mark S. Hernandez, Steven O. Hickel, Debra L. Hurtado, Judy V. Hutchinson, Katherine A. Ibarra, Keith W. Ingle, Anita D. Jackson, Cheryl L. Johnson, Ruby E. Johnson, Allen D. Jones, Ronald T. Jones, Bill P. Keating, Melanie D. Keating, Scott D. King, Wesley D. Knackstedt, David A. Kowing, Karen L. Krengel, Elizabeth a. Kuczynski, Christine L. Laes, Norma K. Laurita, Clifford Linhardt, Lawrence Lopez, Jeanne G. Luceri, Arlene R. Lucero, Eva L. Lucero, Samantha S. Lucero, Sharon S. Lucero, Dean K. Lynn, Linnette K. Lyons, Andrew W. McCaa, James F. McCormick, Karla S. McFadden, Stacy L. McLean, Jennifer F. McMillan, Michelle R. McNamee, Peggy J. Madrid,**

Mary E. Major, Douglas R. Martinez, Patricia C. Martinez, Sharon C. Martinez, Janice A. Mattie, Alicia E. Miley, Jolene A. Montoya, Herbert J. Montoya, David V. Morgan, Diane P. Mouns, Christine M. Murrey, Cynthia S. Myers, Michael S. Nelan, Carol A. Nelson, Angela M. Neuerburg, Helen Nicholson, Debra Nitta, Judy M. O'Berry, Stephen P. Ontis, Bernice Palm, Kevin M. Paul, Cheryl L. Pelton, Victoria R. Peters, Matthew G. Peterson, Joel R. Pfitzer, David A. Purfurst, Rebecca S. Quimby, Shana Quinn, Joe John Quintana, Ray A. Ramirez, John F. Rasmusen, James M. Rau, Beth Ann Reeves, Susan L. Riley, Donna M. Ripperda, Mirna L. Rivera, Justina M. Rivera, Rebecca J. Rivera, Clarissa M. Rodriguez, Clifton B. Roe, George E. Romero, Christine M. Sandstrom, David L. Santarelli, Charles A. Sauer, Lisa L. Schnittke, Julie Ann Sena, Beverly Ann Shanaberger, Gary R. Shea, Patricia K. Skarky, Chad D. Smith, Frank R. Smith, Deborah L. Spillman, Yvonne J. Staples, Jitka Stastna, Lori D. Steen, Margaret L. Stegink, Gregory S. Stone, Lisa M. Stroble, Anita C. Sturgeon, Debbie A. Suttmiller, Donald A. Takemura, Thomas P. Thompson, Bernadine Tubbs, Tia R. Van Marter, Jacob A. Vigil, Nannette M. Vorhies, Heather A. Walker, Mark B. Wells, Lorraine L. Wheeler, Doris M. Wilson, Patrick B. Woltemath, Kathryn A. Wood , Scott A. Younkerman, John S. Zamora, Mary E. Zink, Respondents.

No. 97CA1230.

Colorado Court of Appeals,
Div. A.

May 14, 1998.

Rehearing Denied June 11, 1998.

Certiorari Denied April 12, 1999.

Sherman & Howard, L.L.C., Raymond M. Deeny, Edward J. Butler, James E. Hautzinger, Denver, for Petitioner.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, David M. Kaye, First Assistant Attorney General, Denver, for Respondent Industrial Claim Appeals Office.

Michael J. Belo, General Counsel, UFCW Local 7, Wheat Ridge, for Individual Respondents.

Opinion by Judge CASEBOLT.

Safeway Stores 44 Inc. (Safeway) seeks review of a final order of the Industrial Claim Appeals Office (Panel) affirming the determination by a hearing officer that Nathan J. Aggus and other similarly-situated Safeway employees (claimants) are eligible to receive unemployment benefits under § 8–73–109(1), C.R.S.1997. We affirm.

The claimants are employees of Safeway and members of the United Food and Commercial Workers Union Local #7 (Union). When contracts for employees of Safeway and another chain of grocery stores, King Soopers (Kings), neared expiration, Safeway and Kings formed a multiemployer bargaining unit (MEBU) to negotiate new contracts with the Union. The MEBU informed the Union that, if negotiations failed and the Union chose to call a strike against one of the companies, the other company would retain the option to take any legal action available to it, including locking out its employees.

Contract negotiations proved unsuccessful, and the Union voted to reject the MEBU's last, best, and final offer. The Union then called for a strike against Kings. In response, Safeway locked out the employees represented by the Union in its stores.

The claimants filed claims for unemployment compensation for the period of that lockout. After a hearing, the hearing officer found that Safeway was a member of a MEBU, Safeway had locked out the claim-

ants because of a strike against another member of the MEBU, and the claimants were unemployed because of Safeway's lockout.

After comparing the terms of the expiring contract with the MEBU's last, best, and final offer, the hearing officer concluded that the lockout had resulted from an effort by Safeway to deprive its employees of advantages they already possessed. Thus, he found the claimants to be eligible for unemployment benefits under § 8–73–109(1). The Panel affirmed, and this appeal followed.

## I.

Safeway contends that the hearing officer erred in interpreting the statute to grant unemployment benefits. We disagree.

Section 8–73–109(1) provides as follows:

An individual is ineligible for unemployment compensation benefits for any week with respect to which the division finds that his total or partial unemployment is due to a strike or labor dispute in the factory, establishment, or other premises in which he was employed and thereafter for such reasonable period of time, if any, as may be necessary for such factory, establishment, or other premises to resume normal operations. For purposes of this section, a lockout by any member of a multiemployer bargaining unit shall constitute a labor dispute if such lockout was initiated because of a strike or labor dispute involving any member of such multiemployer bargaining unit. If his unemployment is due to a lockout involving a multiemployer bargaining unit member or otherwise, the individual will not be determined ineligible unless the lockout results from the demands of employees as distinguished from an effort on the part of the employer to deprive the employees of some advantage they already possess.

■ In interpreting a statute, a court's primary task is to ascertain and give effect to the intent of the General Assembly. *Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991).

■ To discern the General Assembly's intent in enacting a statute, we first look to the language of the statute itself, giving the statutory terms their plain and ordinary meaning. If possible, we must give effect to every word of the statute. *Charlton v. Kimata,* 815 P.2d 946 (Colo.1991).

■ Courts will defer to the statutory interpretation advanced by the agency charged with administering and enforcing the statute, unless it is plainly wrong or inconsistent with legislative intent. Section 2–4–203(1)(f), C.R.S.1997; *Nicholas v. North Colorado Medical Center, Inc.,* 902 P.2d 462 (Colo.App. 1995), *aff'd sub nom. North Colorado Medical Center Inc., v. Committee on Anticompetitive Conduct,* 914 P.2d 902 (Colo.1996).

■ If the statutory language is clear and the legislative intent appears certain, resort to other rules of statutory construction is unnecessary. *Samaritan Institute v. Prince–Walker,* 883 P.2d 3 (Colo.1994).

Safeway argues that the first sentence of the statute establishes that employees whose unemployment is caused by a strike or labor dispute at their place of employment are not entitled to benefits. The second sentence then states that a labor dispute includes a lockout by a member of a MEBU in response to a strike involving another member of that unit. Safeway reasons that, because the first two sentences specifically address the issue here, the third sentence is irrelevant. Under this analysis, the third sentence applies only when a MEBU member locks out its employees for a reason *other than* a strike by the Union. Then and only then, Safeway argues, should the reasons for the lockout be examined to determine if the locked-out claimants are eligible for benefits.

Claimants contend that both the second and third sentences apply to any type of lockout and, therefore, even if a lockout is determined to be caused by a strike against the MEBU, the underlying cause of the lockout must be analyzed to determine whether the locked-out claimants are eligible for benefits. We agree with claimants.

Safeway's reading of the statute would require us to disregard the language of the third sentence, which expressly prohibits a determination of ineligibility for a locked-out

employee *unless* the lockout results from the employees' demands, rather than the employer's efforts to deprive the employees of some advantage they already possess.

■ When read as a whole, the statute provides that, while a lockout resulting from a strike against another member of a multiemployer bargaining unit may constitute a "labor dispute" for purposes of the statute, the locked-out employees are nevertheless eligible for benefits if the lockout resulted from the employer's efforts to deprive the employees of some advantage they already possessed. Hence, the meaning of this subsection is that, in order to resolve a claimant's eligibility for unemployment benefits in *any* lockout, the Division must determine the cause of the lockout.

Contrary to Safeway's arguments, this construction of the statute gives a consistent, harmonious, and sensible effect to all its parts. *See Martinez v. Continental Enterprises*, 730 P.2d 308 (Colo.1986). The statutory language demonstrates that the General Assembly intended to treat locked-out employees differently from other employees involved in labor disputes. Further, had the General Assembly intended the construction Safeway posits, it could have expressly stated that the third sentence applies only in situations in which a lockout is not the result of a strike.

To the extent the statute might be deemed ambiguous, our construction also is supported by the legislative history of this subsection. *See Ouray v. Olin*, 761 P.2d 784 (Colo.1988) (court may consider history of statute, including prior statutes on subject, when determining legislative intent). The original version of this section referred only to strikes and did not mention lockouts. *See* Colo. Sess. Laws 1936, ch. 2, § 5 at 20 (3d Extraordinary Session). The General Assembly chose to address the issue of lockouts when it amended the statute in 1963 by adding the following provisions:

For the purposes of this section, a lockout by any member of a multiemployer bargaining unit shall constitute a labor dispute if such lockout was initiated because of a strike or labor dispute involving any member of such multiemployer bargaining unit;

*provided, that* if his unemployment is due to a lockout involving a multiemployer bargaining unit member or otherwise, the individual will not be determined ineligible unless the lockout results from the demands of employees as distinguished from an effort on the part of the employer to deprive the employees of some advantage they already possess. (emphasis added)

Colo. Sess. Laws 1963, ch. 188, § 82–4–11 at 678.

The structure of the compound clauses in this amendment clearly indicates that the clauses were meant to be read together, with the first clause subordinate to the second in its application. The first clause statutorily established that a lockout constituted a labor dispute for purposes of the unemployment compensation statute. However, the second clause set forth the standard for determining whether claimants unemployed as a result of a lockout were eligible for benefits.

■ The revisor of statutes in 1973 eliminated the compound structure of the clauses and made the clauses separate sentences. That revision has remained unchanged to the present. However, the revisor has authority to make only non-substantive changes to the statutes. *See* § 2–5–101, C.R.S.1997; *People v. North Avenue Furniture & Appliance, Inc.*, 645 P.2d 1291 (Colo.1982). Thus, the original version of the amendment provides guidance and support for our interpretation.

Further, this construction is supported by prior case law applying these sentences. In *Kania v. Shaffer*, 31 Colo.App. 438, 506 P.2d 384 (1972), a division of this court looked to the underlying cause of the lockout to determine whether the locked-out claimants were eligible for unemployment benefits.

We are not persuaded otherwise by Safeway's citation to statutes and case law of other jurisdictions and case law under the National Labor Relations Act. Because the other state statutes do not contain the same provisions as our statute, neither their text, nor the cases interpreting them, are helpful. Further, we find no indication that the General Assembly intended to pattern these lockout provisions after the concepts of "offensive" and "defensive" lockouts developed by

case law construing the National Labor Relations Act.

Safeway's reliance on *F.R. Orr Construction Co. v. Industrial Commission*, 188 Colo. 173, 534 P.2d 785 (1975), is misplaced; that case involved the construction of a different subsection of the statute.

We thus reject Safeway's contention.

## II.

■ Safeway contends that the hearing officer erred in his application of the statute. We disagree.

Safeway first argues that the hearing officer erred in determining the "merits" of the bargaining proposals because such an inquiry is preempted by federal law. However, contrary to Safeway's argument, the hearing officer did not determine the "merits" or reasonableness of the employer's proposals. Rather, as mandated by the statute, he compared the substance of the proposals in the MEBU's last, best, and final offer to the substance of the same provisions in the expiring contract. Based on this comparison, he concluded that some of the proposals constituted a loss of "advantages" to which the employees were entitled under the expiring contract.

Safeway further argues that, under the statute, the only "advantages" which may be considered must be "compensation" related. We disagree. The statute does not state such a limitation, and we decline to read one into it. *See Kraus v. Artcraft Sign Co.*, 710 P.2d 480 (Colo.1985); *Jefferson County v. Kiser*, 876 P.2d 122 (Colo.App.1994).

We reject Safeway's argument that the hearing officer erred in determining that the lockout resulted from the employer's efforts to deprive the employees of advantages they already possessed. In so determining, the hearing officer found that the MEBU's offer would have caused significant changes in the employees' medical coverage, retirement plan, and scheduling and staffing programs. He also determined that the proposals would have made it more difficult to become a full-time employee, reduced the advantages of seniority, limited promotions to those within individual stores, and made the possibility of layoffs for full-time employees greater.

Contrary to Safeway's argument, these evidentiary findings are supported by substantial, although sometimes conflicting evidence and inferences, and thus are binding on judicial review. *See* § 8–74–107(4), C.R.S.1997; *Goodwill Industries v. Industrial Claim Appeals Office*, 862 P.2d 1042 (Colo.App.1993). Consequently, the hearing officer did not err in determining that the lockout occurred because of the employer's effort to deprive the employees of advantages they already possessed.

In so concluding, we note Safeway's assertion that the statute requires the hearing officer to balance the entirety of the proposals in the MEBU's last, best, and final offer to determine whether, on the whole, the employees' benefits were enhanced, or whether the employees ultimately were disadvantaged, and that the hearing officer failed to make such a determination. Even if we assume the statute requires such a balancing test, the hearing officer, contrary to Safeway's argument, made findings concerning the benefits to be gained by the employees under the final proposal and then determined that the added benefits of the new proposal were greatly outweighed by the deprivations proposed. As before, the evidentiary findings to this effect are supported by substantial, although conflicting evidence and inferences, and thus may not be disturbed. *See Goodwill Industries v. Industrial Claim Appeals Office, supra.*

For these reasons, we find no reversible error in the hearing officer's conclusions.

## III.

■ Safeway next contends that it was denied due process when the hearing officer admitted evidence concerning the substantive provisions of the collective bargaining proposals. We disagree.

Safeway argued at the hearing that the claimants had been found to be eligible for unemployment benefits under § 8–73–109(1) because it was not a member of a valid MEBU. Safeway reasoned that, because the only issue it appealed was the determination

that a valid MEBU did not exist, the only issue for review before the hearing officer was the existence of such a bargaining unit. Safeway asserted that, because the claimants did not cross-appeal, they should not be allowed to raise issues concerning the content of the collective bargaining proposals. Safeway asserts that the hearing officer should instead have adjourned the hearing and remanded the matter to a deputy for a determination whether the lockout was attributable to an effort to deprive the employees of advantages they possessed. We are not persuaded.

First, we are unaware of any statutory or regulatory provisions that would require a party to file a cross-appeal in an unemployment compensation case. Therefore, the claimants were not obligated to raise the issue of the contents of the collective bargaining proposals in that manner.

Further, based on our review of the record, we agree with the Panel that Safeway's objection to any consideration of the merits of the collective bargaining proposals was based largely on its construction of the statute.

Safeway argued that the only relevant issue for the hearing officer to address, pursuant to its interpretation of the statute, was whether a valid MEBU existed. Thus, Safeway asserted that the issue of whether the lockout was attributable to an effort on its part to deprive the employees of advantages they possessed was irrelevant and should not have been considered.

However, even if Safeway's argument can be characterized as an objection to the admission of evidence pertaining to the merits of the collective bargaining proposal, on the ground that it had not received notice that this issue was to be raised pursuant to Department of Labor & Employment Regulation 11.2.9, 7 Code Colo. Reg. 1101–2, we still find no denial of due process based on the admission of the evidence.

Here, the claim file demonstrates that the broad issue was the eligibility of the claimants for unemployment benefits under the terms of § 8–73–109(1). One factual issue raised by the terms of that statute was whether a MEBU existed. If a valid MEBU existed, the statutory criteria raised other factual issues, such as whether a member of the MEBU had locked out its employees in an attempt to deprive them of advantages they previously had possessed.

Thus, Safeway was on notice both by the terms of the statute and by the claim documentation that the factual issues raised by the terms of § 8–73–109(1) were at issue. One such issue was the merits of the collective bargaining proposal. We therefore reject Safeway's argument that it was denied due process when the hearing officer admitted evidence on this issue.

We further reject Safeway's argument that the hearing officer should have initially remanded the matter to a deputy. We agree with the Panel that such a remand would have served no purpose.

A hearing officer does not act in an appellate capacity with regard to a deputy's decision and, thus, does not review the propriety of the deputy's decision. Rather, the proceedings before a hearing officer are *de novo*. See *Lucero v. Industrial Claim Appeals Office*, 812 P.2d 1191 (Colo.App.1991). Accordingly, a remand would only have involved an additional determination of the claimant's eligibility under § 8–73–109(1), which was already the general issue before the hearing officer.

## IV.

We reject Safeway's final contention that it was denied due process because of alleged statements made by the Executive Director of the Department of Labor & Employment which indicated that he had predetermined the issues. The proceedings before the hearing officer are *de novo*, see *Lucero v. Industrial Claim Appeals Office, supra*, and the hearing officer's decision was based on the law and evidence presented to him. From our review of the record, we can perceive no evidence of bias on the part of the hearing officer, and Safeway has cited none. See *Nesbit v. Industrial Commission*, 43 Colo. App. 398, 607 P.2d 1024 (1979).

Order affirmed.

Judge KIRSHBAUM* and Judge PIERCE* concur.